COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Judges Beales, McCullough and O'Brien
Argued by teleconference


QUYEN VINH PHAN LE

                                                       OPINION BY
v.      Record No. 0850-14-4              JUDGE MARY GRACE O'BRIEN
                                                       JULY 28, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Lauren Whitley, Senior Assistant Public Defender (Office of the
Public Defender, on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


In two separate bench trials, Quyen Vinh Phan Le ("appellant") was convicted of three

counts of custodial indecent liberties in violation of Code § 18.2-370.1.  Appellant was found

guilty of one count of custodial indecent liberties against C.L.K. and two counts of custodial

indecent liberties against C.M.K.[1]  The trial court acquitted appellant of a third count of custodial

indecent liberties against C.M.K.  The cases were consolidated for purposes of appeal.

Appellant asserts three assignments of error.  He contends that "[t]he trial court erred in

finding the evidence sufficient under § 18.2-370.1 as the Commonwealth did not prove beyond a

reasonable doubt that [he] was not married to either [C.L.K. or C.M.K.] or that either [C.L.K. or

C.M.K.] were not emancipated."  He also asserts that "[t]he trial court erred in finding that [he]

had sexually abused [C.M.K.] between June 29, 2004 and July 30, 2004 as charged in the

indictment."  Finally, he argues that "[t]he trial court erred in finding sufficient evidence that

_____

[1] We will refer to the minor children by their initials.

[he] sexually abused [C.M.K. and C.L.K.] as there was no evidence any force, threat, or intimidation was used." We disagree. For the following reasons, we affirm the trial court.

## I.  BACKGROUND

Appellant was a Tae Kwon Do instructor in Northern Virginia. He coached two sisters, C.L.K. and C.M.K., who were the victims of these crimes. C.L.K. and C.M.K. trained seven days a week and competed internationally. C.M.K., who began training with appellant when she was nine or ten years old, testified that in 2002, when she was fifteen years old, her relationship with appellant began to change and became sexual. She stated that she and appellant had sexual intercourse on May 9, 2003, her sixteenth birthday, and continued to have sexual relations "probably every day." Appellant was twenty-nine years old at the time.

Sometime between June 29 and July 30, 2004, C.M.K. thought she was pregnant and appellant took her to Planned Parenthood for a pregnancy test. When the test returned negative, appellant bought C.M.K. birth control pills and had the bills sent to his studio. The sexual relationship continued while C.M.K. was seventeen years old.

In January 2005, C.M.K. began to date someone else with the hope that appellant "would let [her] go." She continued to attend appellant's Tae Kwon Do school and when appellant discovered that she was seeing someone else, he required that she perform oral sex on him as a "kind of punishment." He ultimately dismissed her from his studio in June 2006. C.M.K. testified that she was relieved when that happened.

Appellant presented evidence that he was close to C.M.K. and C.L.K.'s family. Their mother was his office manager. She had a key to the studio and was often at the studio when her daughters were there. Appellant elicited testimony from C.M.K. and C.L.K.'s younger sister, who identified a journal entry from January 2005, in which she wrote that if appellant and C.M.K. "don't get married, I'm going to be pissed."

At the close of the Commonwealth's case, appellant made a motion to strike. He argued that the evidence was insufficient as a matter of law to establish that he committed the crimes and that the evidence was insufficient to establish that one of the offenses occurred during the time frame alleged in the indictment. Appellant also argued at his motion to strike that sexual abuse required non-consensual conduct, which the Commonwealth failed to prove. The trial court overruled the motion to strike. Appellant renewed the motion on the same grounds at the close of the evidence. Once again, the trial court overruled the motion to strike and convicted appellant of the offenses occurring in May of 2003 and July of 2004. The trial court acquitted appellant of the charge alleging an offense which occurred in January of 2005.

In the other trial, for offenses against C.L.K., she testified that she was born in 1991 and began training with appellant at age six. With appellant's coaching, C.L.K. progressed and competed internationally. She was taught to respect appellant as a "Master" and follow his commands.

When C.L.K. was sixteen, appellant began a physical relationship with her, which started by him "groping" her breasts and private areas. He told her that they needed a "strong bond" to allow her to continue to achieve her goals. C.L.K. testified that she submitted to appellant's advances because she was afraid that otherwise she would lose her opportunity to train and compete on a national level.

In 2008, when C.L.K. was seventeen, she and appellant had sex for the first time. C.L.K. testified that she and appellant had sex "countless times" during the fall of 2008. Appellant's computer contained nude pictures of C.L.K. taken May 9, 2008. In 2009, C.L.K. ended the relationship and appellant terminated her from his Tae Kwon Do school. C.L.K. testified that she begged appellant to accept her back into the school, but he demanded sexual acts in exchange.

Appellant testified that he began having sex with C.L.K. "long after she was eighteen" and that their relationship lasted merely a few months. He indicated that he had surgery in July 2008, and was physically unable to have sexual intercourse for the next three or four months. After considering the evidence, the trial court found appellant guilty of custodial indecent liberties against C.L.K. occurring between September and November of 2008.

## II. ANALYSIS

### A. Marriage and Emancipation

In appellant's first assignment of error, he contends that the trial court erred in finding the evidence sufficient to convict him because the Commonwealth did not prove that he was not married to the victims and that the victims were not emancipated. He argues that lack of marriage and emancipation are elements of the crimes.

The offenses against C.M.K. occurred in 2004, when the statute read as follows:

> Any person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen . . . or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally [commits various acts] . . . shall be guilty of a Class 6 felony.

Code § 18.2-370.1 (2001). The crimes against C.L.K. occurred in 2008, after the statute was amended. The statute in effect in 2008 states:

> Any person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally [commits various acts] . . . shall be guilty of a Class 6 felony.

Code § 18.2-370.1. Therefore, the 2001 version of the statute applied in the case in which C.M.K. was the victim and the 2008 version applied in the case in which C.L.K. was the victim. In both versions of the statute, however, proof that the parties were not married is an element of

- 4 -

the offense. The statute as amended in 2008 also requires the Commonwealth to prove that the minor was not emancipated at the time of the offense.

The Commonwealth contends that appellant never raised this issue in either trial and therefore, pursuant to Rule 5A:18, it is waived and cannot be considered on appeal. Appellant concedes that he did not raise the issue of the lack of evidence regarding marriage or emancipation during his motions to strike or closing argument at either trial, but nevertheless contends that his argument should be considered based on the ends of justice exception to Rule 5A:18.

Rule 5A:18 states as follows:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

We have held that "[a]s a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). "The primary purpose of requiring timely and specific objections is to afford the trial judge a fair opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." Rodriguez v. Commonwealth, 18 Va. App. 277, 284, 443 S.E.2d 419, 424 (1994). "'A specific, contemporaneous objection also provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented.'" Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 79, 688 S.E.2d 199, 207 (2010) (quoting Shelton v. Commonwealth, 274 Va. 121, 126, 645 S.E.2d 914, 916 (2007)). Accordingly, "[t]he Court of

Appeals will not consider an argument on appeal which was not presented to the trial court."

Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

For us to apply the ends of justice exception to the rule as appellant requests, this Court must first determine, from reviewing the record, whether a miscarriage of justice has occurred. "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

The law regarding the issue of invoking the ends of justice exception is well-settled:

> In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth *failed* to prove an element of the offense. We will not invoke the exception if the record suggests that the Commonwealth merely inadvertently or unknowingly failed to adduce adequate proof of an element of the offense. In order to show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur.

Id. at 221-22, 487 S.E.2d 272-73; see also Flanagan v. Commonwealth, 58 Va. App. 681, 695, 714 S.E.2d 212, 218 (2011). Accordingly, for this Court to consider the merits of appellant's assignment of error, he must show that either the conduct for which he was convicted is not a criminal offense or that the record affirmatively establishes that an element of the offense did not occur. Merely claiming that the Commonwealth failed to prove an element of the offense will not constitute a miscarriage of justice.

In Redman, the appellant argued for the first time on appeal that the Commonwealth failed to prove two elements of the crime for which he was convicted. Redman, 25 Va. App. at 217, 487 S.E.2d at 271. We declined to apply the ends of justice exception to Rule 5A:18

despite the fact that the Commonwealth clearly did not prove beyond a reasonable doubt two of the elements of the offense. Id. at 223, 487 S.E.2d at 273. We held:

> The Commonwealth's failure to present sufficient evidence to prove these two elements demonstrates only that a miscarriage of justice *may* have occurred, not that a miscarriage of justice did occur. Had the defendant made a timely motion to strike the evidence, setting forth the specific grounds therefor, the trial court would have had the opportunity to address the issue by permitting the Commonwealth to reopen and correct the omission, if it be such, or to strike the evidence for lack of proof of a material element.

Id.

In the case before us, appellant contends that "because there was no evidence introduced regarding the elements of marital status or emancipation, therefore the record shows these elements did not occur." This argument ignores the distinction between lack of proof of an element and affirmative proof that the element did not occur. Arguing that the record is devoid of evidence of an element does not equate with affirmative proof that an element did not occur.[2]

Appellant also argues that the Commonwealth's failure to introduce evidence in support of an element of the crime violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. However, we have repeatedly held that even constitutional claims

---

[2] Not only was there no evidence adduced which would support the proposition that the victims were married to appellant or emancipated, there was significant circumstantial evidence which indicated that the complaining witnesses were not married to appellant or emancipated. In C.M.K.'s case, which required proof that the parties were not married, C.M.K. testified that when the sexual activity began she was sixteen, lived at home with her parents, and she and appellant were "basically . . . like boyfriend-girlfriend." Her younger sister identified a journal entry she wrote during this time, which said she "was going to be pissed" if appellant and C.M.K. did not get married. This implies that they were not currently married.

In the case involving C.L.K., the Commonwealth was required to prove both that C.L.K. was not emancipated and that she was not married to appellant. However, there was circumstantial evidence of these elements. C.L.K. testified that she and appellant "were never upfront" about their relationship, there was no evidence that they lived together, and her mother would drive her to appellant's house.

can be barred by Rule 5A:18.  See Ohree, 26 Va. App. at 308, 494 S.E.2d at 488; Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992).

In summary, the Commonwealth was required to prove that appellant was not married to either of the juveniles.  The Commonwealth was also required to prove that C.L.K. was not emancipated.  However, lack of proof is not affirmative evidence to the contrary, which would warrant exercising the "ends of justice" exception to Rule 5A:18.  Therefore, we decline to address the assignment of error and determine that it was waived.

B.  Sufficiency of the Evidence to Prove Sexual Abuse

Appellant's other assignments of error involve sufficiency of the evidence and issues of statutory construction.  "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."  Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).  On appeal, "'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  To the extent an assignment of error involves statutory construction, we review these issues *de novo*.  Burns v. Commonwealth, 279 Va. 243, 250, 688 S.E.2d 263, 266 (2010); Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007).

Appellant contends the evidence was insufficient as a matter of law for the trial court to find that he sexually abused C.M.K. during the June 29, 2004 to July 30, 2004 time frame alleged in the indictment.  Appellant argues that C.M.K.'s testimony at trial was not specific enough to establish that the sexual abuse occurred during the time period charged in the indictment.  Because this is a challenge to the sufficiency of the evidence, we "must uphold the

conviction unless it was plainly wrong or lacked evidence to support it." Blevins v. Commonwealth, 63 Va. App. 628, 634, 762 S.E.2d 396, 398 (2014).

C.M.K. testified that she had sexual intercourse with appellant for the first time on her sixteenth birthday. When asked specifically about the time period between June 29, 2004 and July 30, 2004, she testified that "it was still a sexual relationship," and stated that she had sexual relations with appellant "probably every day." She also related that during the time alleged in the indictment she thought she was pregnant, so appellant took her to Planned Parenthood for a pregnancy test and to obtain birth control pills.

The Supreme Court of Virginia has held that proof of sexual intercourse is sufficient to sustain a conviction under Code § 18.2-370.1. See Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006) ("[I]f the evidence established beyond a reasonable doubt that Nobrega engaged in sexual intercourse with the child, Nobrega's contention that the evidence was insufficient to convict him under . . . Code § 18.2-370.1 must fail."). At trial, C.M.K. testified that she had "sexual intercourse" with appellant on her sixteenth birthday. While the date of her sixteenth birthday preceded the time period of the indictment, she specifically testified that during the time period alleged in the indictment her relationship with appellant was still sexual, noting that she and appellant were engaging in sexual activity "probably every day." There were no inconsistencies or ambiguities in her testimony regarding the sexual nature of her relationship with appellant. Her testimony supports the conclusion that appellant had sexual intercourse with her during the time period alleged in the indictment.

Appellant also argues that there was no corroborative evidence of physical contact between himself and C.M.K. However, "[a]s we have stated, the victim's testimony alone, if not inherently incredible, is sufficient to support a conviction . . . ." Id. at 519, 628 S.E.2d at 927. "We have repeatedly held that corroboration of the prosecutrix in a rape case is not essential and

that her testimony alone is sufficient to sustain a conviction if it is credible and the guilt of the accused is believed by the jury beyond a reasonable doubt." Fogg v. Commonwealth, 208 Va. 541, 546, 159 S.E.2d 616, 620 (1968), rev'd and remanded on other grounds sub nom. Fogg v. Slayton, 408 U.S. 937 (1972); see also Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57-58 (1980); Poindexter v. Commonwealth, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972). Accordingly, the trial court's finding of guilt was not plainly wrong or without evidence to support it.

### C.  Use of Force as an Element of the Offense

In appellant's final assignment of error, he asserts that the evidence was insufficient in both cases because the Commonwealth was required to prove that the offenses with which he was charged were accomplished by the use of force.  Appellant was charged with committing indecent liberties by sexually abusing the victims while he was in a custodial relationship with them.  Code § 18.2-67.10(6) defines sexual abuse as

> an act committed with the intent to sexually molest, arouse, or gratify any person, where:
>
> a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
>
> b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;
>
> c. If the complaining witness is under the age of 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or
>
> d. The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

The Commonwealth and appellant agree that the relevant portion of the statute is subsection (a). Nevertheless, appellant argues that because subparts (b) and (d) explicitly require the use of force, and because subpart (c) establishes constructive force by the element of age, proof of force was required for a conviction under subsection (a).

When reviewing issues of statutory construction, "courts apply the plain language of a statute unless the terms are ambiguous." Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006). "'[I]f the language is plain, certain and unambiguous, so that no doubt arises from its own terms as to its meaning, then there is no room for interpretation.'" Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 480, 666 S.E.2d 361, 368 (2008) (alteration in original) (quoting Boynton, 271 Va. at 228 n.10, 623 S.E.2d at 926 n.10).

Appellant concedes that subsection (a) of the definition of sexual abuse "lacks a mention of any type of force in combination with the touching." Yet, he urges us to read the element of force into subsection (a) because subparts (b) and (d) require force and subpart (c) uses the complaining witness' age as constructive evidence of force. He cites cases interpreting the elements of aggravated sexual battery under Code § 18.2-67.3 and sexual battery under Code § 18.2-64. In both of those crimes, the Commonwealth must prove that the action was accomplished by force, threat, or intimidation.

However, in the present case, appellant was charged with violations of Code § 18.2-370.1, custodial indecent liberties, not sexual battery or aggravated sexual battery. Force is not an element of custodial indecent liberties; sexual abuse is. Sexual abuse, however, is not a crime in and of itself. It is an element of the crime of custodial indecent liberties, just as force is an element of aggravated sexual battery. Code § 18.2-67.10 defines the various forms of sexual abuse, some of which involve force, one of which does not.

"The primary objective of statutory construction is to ascertain and give effect to legislative intent." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). "'Although penal statutes are to be strictly construed against the Commonwealth, courts are nevertheless bound by the plain meaning of unambiguous statutory language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.'" Bowling v. Commonwealth, 51 Va. App. 102, 108, 634 S.E.2d 354, 357 (2007) (quoting Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327-28 (2006)). "'[W]hen the language in a statute is clear and unambiguous, [this Court] appl[ies] the statute according to its plain language.'" Johnson v. Commonwealth, 53 Va. App. 608, 613, 674 S.E.2d 541, 544 (2009) (second and third alteration in original) (quoting Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006)).

The General Assembly could have chosen to include the words "by force" in subsection (a) of Code § 18.2-67.10(6). It did not. A plain reading of the statute establishes that the General Assembly did not intend to include a force requirement for this particular subsection. Accordingly, we will not read such a requirement into the statute. The Commonwealth was only required to prove that appellant acted intentionally when he "touche[d] the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6)(a). Therefore, because the Commonwealth was not required to prove use of force, the trial court did not err in denying appellant's motion to strike.

III. CONCLUSION

For the foregoing reasons, appellant's convictions are affirmed.

Affirmed.