COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia

UNPUBLISHED

JOSEPH WAYNE SMITH, JR.

                                        MEMORANDUM OPINION[*] BY

v.      Record No. 0737-22-2          JUDGE KIMBERLEY SLAYTON WHITE
                                                NOVEMBER 8, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Jeffrey W. Shaw, Judge

Charles E. Haden for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a jury trial, Joseph Wayne Smith, Jr., was convicted in the Middlesex County

Circuit Court of forcible sodomy of a child under the age of thirteen, in violation of Code

§ 18.2-67.1.[1] Smith alleges that the evidence was insufficient to prove his guilt. However, because

Smith failed to renew his motion to strike after presenting evidence on his behalf and because he did

not file a post-trial motion to set aside the verdict, he has waived his sufficiency argument for

purposes of appeal. Acknowledging lack of preservation, Smith seeks to invoke the ends of justice

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Code § 18.2-67.1(A)(1) states "an accused shall be guilty of forcible sodomy if he or
she engages in cunnilingus, fellatio, anilingus, or anal intercourse with a complaining witness . . .
or causes a complaining witness . . . to engage in such acts with any other person, and 1. The
complaining witness is less than 13 years of age[.]"

exception to Rule 5A:18.[2]  Smith fails to meet his burden that a manifest injustice occurred, nor does the record affirmatively establish error.  We, therefore, affirm his conviction.

## BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the light most favorable to the Commonwealth, the prevailing party in the trial court.'"  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

So viewed, the evidence established that, in March 2020, L.D., who was born in December 2007, moved into the trailer home L.D.'s mother Camille shared with her fiancé, Chris.  Chris's brother, Smith, who was born in 1976, and their mother, "Nana," also resided in the residence. Camille shared a bedroom with Chris while Nana had her own bedroom.  At first, L.D. slept on an air mattress in Camille and Chris's bedroom, but she began sleeping on a chair in the living room when they put a bassinet in their bedroom for their expectant baby.  Smith typically slept on a couch in the living room.

L.D. testified that Smith engaged in a series of inappropriate behaviors with her at the residence.  Specifically, she recalled one incident where she was playing in Camille's room when Smith approached her from behind and kissed and "nibble[d]" the back of her neck.  L.D. testified that she "felt his teeth."  L.D. told Camille about this incident later that day.  L.D. testified that Camille confronted Smith, who neither confirmed nor denied the behavior, but instead just "put his

[2] Rule 5A:18 provides "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."

head down." When Chris confronted Smith about the same behavior, Smith denied everything and said that he had not done anything harmful.

L.D. described other inappropriate behavior when she testified to another incident where she was playing football with Smith, and he tackled her. L.D. testified that Smith laid on top of her, face-to-face. L.D. also stated that Smith gave her "bear hugs from the back" when they went out behind the garage to use the punching bag and that she "could feel his whole front of his body on the back of [her] body." Specifically, L.D. remembered feeling Smith's penis. When Chris again confronted Smith about the touching, Smith responded, "I am not doing anything wrong," and threatened to "cut [Chris's] head off." There was also an incident of Smith touching and rubbing L.D.'s upper thigh.

One morning, after Chris left for work, and while Camille and Nana were still sleeping, L.D. was playing a game on her computer when the WiFi went out. L.D. awoke Smith in the living room and asked him to turn it back on so she could resume her game. Instead, Smith grabbed her arm and threw her onto the couch. He then removed her clothes and put two fingers in her mouth so she could not talk. With his other hand, Smith held both of L.D.'s hands behind her back. Smith inserted his penis into L.D.'s anus[3] and moaned slightly. The penetration hurt her, and L.D. began to cry. When he was finished, Smith told L.D. that if she said anything about it, he was going to stab her pregnant mother in the stomach.

A second occurrence happened under similar circumstances. Chris was at work and Camille and Nana were sleeping when Smith put L.D. in the same position on the couch and engaged in the same behavior. This time, Smith told L.D. that if she said anything, he was going to cut Chris's head off and give it to Camille.

---

[3] At trial, L.D. circled and labeled "penis" on a diagram of a male body and circled and labeled "anal" on a diagram of a female body as the parts involved. The Commonwealth introduced these diagrams as Commonwealth's Exhibit 1.

Before L.D. moved into the trailer, she was cutting herself. However, after the acts of sodomy started to occur, the cutting got worse. When Camille found the cuts on L.D.'s body and inquired about them, L.D. responded that she was just sad about her grandmother passing away. In addition, following the acts of sodomy, L.D. stated that she constantly felt pain in her lower back and on her legs, for which she sought Tylenol or ibuprofen and took hot baths. L.D. distanced herself from Smith and refused to sit on the couch in the living room. She became clingy with Camille. L.D. stated that she had thoughts of suicide. She took Smith's threats seriously and just "didn't know how to talk about it." She "didn't want people to get hurt."

L.D. disclosed some of the incidents of inappropriate touching in May 2020 to law enforcement, but she did not tell law enforcement about the acts of sodomy until September 2021. When Chris learned of some of the inappropriate touching in 2020, he confronted Smith, who got very angry. Thereafter, Smith moved out of the trailer. In 2021, L.D. told her boyfriend about the acts of sodomy. Her boyfriend told Camille, who then confronted L.D. and learned of the offenses. Camille eventually told Chris about the acts of sodomy, who then confronted Smith. Smith denied the accusations but then claimed that L.D. had asked for it.

Camille testified that L.D.'s whole attitude changed after the incidents occurred. "She went from being semi-happy to super depressed and dressing different and just upset." L.D. seemed really angry most of the time. She started to cover her whole body up and wore a lot of black clothing. L.D. also became more needy and wanted Camille around at all times. Camille confirmed that L.D. started complaining of pain in her leg and she was overly protective of Camille's pregnancy.

Camille testified that a couple of weeks before trial she pressed L.D. about what had happened and asked if it was all true. At first, L.D. said that she made it all up, but then within a

- 4 -

split second, L.D. recanted that statement and told her mother that it was all true. Camille admitted that she had pressed L.D. into a denial.

Following the Commonwealth's case-in-chief, Smith moved to strike, arguing that L.D.'s testimony was inconsistent and uncorroborated. The court denied the motion. Smith then testified in his defense. When asked specifically if he had "at any time rape[d] [L.D.,]" he replied, "I swear to our God I did not rape her." Smith also admitted that he had been convicted of a crime of moral turpitude. Following the conclusion of the presentation of evidence, Smith did not renew his motion to strike or make a post-trial motion to set aside the verdict. The jury convicted Smith on one count of sodomy of a child under the age of thirteen, and the circuit court imposed the required sentence of life in prison. Smith appeals.

ANALYSIS

Smith argues that the evidence presented at trial failed to prove his guilt because it was based "entirely upon the [unreliable] testimony of L.D." Smith acknowledges that he did not preserve the issue for appeal, but he asks this Court to consider the matter under the ends of justice exception to Rule 5A:18. We decline to do so.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

> Under Virginia law, "[w]hen a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's [or Commonwealth's] evidence in chief, he waives his right to stand upon such motion."

*Rompalo v. Commonwealth*, 72 Va. App. 147, 154 (2020) (quoting *McDowell v. Commonwealth*, 282 Va. 341, 342 (2011)), *aff'd*, 299 Va. 683 (2021). Thus, "[a]fter presenting his or her own evidence, a defendant must renew the motion to strike or file a motion to set aside the verdict." *Id.* This is because "[b]y introducing evidence on his [or her] own behalf, a defendant demonstrates 'by his conduct' the intent to abandon or waive his argument made at the conclusion of the Commonwealth's case-in-chief." *Id.* at 155 (quoting *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 83 (2010)).

Smith made a motion to strike following the Commonwealth's case-in-chief, but then failed to renew his motion to strike after presenting evidence on his behalf. He also failed to file a post-trial motion to set aside the verdict. By his conduct, then, Smith abandoned his sufficiency argument in the trial court and has waived the assignment of error for purposes of appeal. Acknowledging this, Smith nevertheless asks that we apply the ends of justice exception to Rule 5A:18 and reverse his case for a new trial.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "[T]o show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015) (quoting *Redman*, 25 Va. App. at 221-22).

- 6 -

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). The "exception requires proof of an error that was 'clear, substantial and material.'" *Herring v. Herring*, 33 Va. App. 281, 287 (2000) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "Virginia courts applying the ends-of-justice exception require a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513). "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

Smith has failed to carry his burden of proving a manifest injustice in this case. In fact, Smith does not argue that the conduct for which he was convicted was not a criminal offense, nor does the record affirmatively show that an element of the offense did not occur. Rather, Smith maintains that L.D.'s testimony was inherently incredible because she delayed reporting the sodomy for more than a year, and he claims that L.D.'s testimony was inconsistent and uncorroborated. However, the factfinder's conclusions on issues of witness credibility "may only be disturbed on appeal if this Court finds that [the witness's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)).

Here, we cannot say that L.D.'s testimony was unbelievable or inherently incredible as a matter of law. L.D. described in graphic terms how Smith threw her onto the couch, put his fingers in her mouth to keep her from screaming, held her hands behind her back, and then painfully inserted his penis into her anus. Her testimony plainly and clearly described the act of forcible sodomy. The jury simply credited L.D.'s testimony over Smith's as it was entitled to do. The

factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc). Moreover, the jury was free to disregard Smith's "self-serving" testimony, believe L.D., and conclude that Smith was "lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

We also note that L.D.'s testimony was corroborated by her mother's testimony that L.D.'s whole attitude changed after the incidents occurred. L.D. went from being semi-happy to very depressed, angry, and upset. Although L.D. already had a habit of cutting, the cutting got worse. She became clingy and suicidal. She would not sit on the couch where the sodomy occurred, and she avoided Smith at all costs. She also became unusually protective of her mother's pregnancy. All of this corroborated L.D.'s testimony and supported the jury's acceptance of her version of events. The mere fact that L.D. momentarily recanted when confronted by her mother does not change the result. She immediately corrected her statement and told her mother it was all true. Because the jury's credibility determination was not plainly wrong, we cannot disturb it on appeal. *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).

Furthermore, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 88 (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)).

In short, Smith points to nothing in the record affirmatively proving that an element of the offense did not occur or that he was convicted for non-criminal conduct. Accordingly, the ends of

justice exception does not apply and Rule 5A:18 bars our consideration of Smith's assignment of error on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the conviction.

*Affirmed.*