COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Causey and Callins

GEORGE LEROYAL TOWNSEND

                                                    MEMORANDUM OPINION*
v.       Record No. 1151-22-1                             PER CURIAM
                                                     NOVEMBER 8, 2023
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Ken J. Baldassari, Assistant
Attorney General, on brief), for appellee.


Following a jury trial, George Townsend was convicted in the Accomack County Circuit

Court on one count of rape, in violation of Code § 18.2-61(A)(ii).[1] Townsend contends that the

evidence failed to prove the victim, K.W., was so intoxicated that she was mentally incapacitated

and incapable of consent. Townsend failed to make this argument in the trial court. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

We find that Townsend's assignment of error is waived for purposes of appeal and affirm the trial

court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "If any person has sexual intercourse with a complaining witness . . . and such act is
accomplished . . . through the use of the complaining witness's mental incapacity or physical
helplessness . . . he or she shall be guilty of rape." Code § 18.2-61(A)(ii).

BACKGROUND

In March 2020, K.W. attended a birthday party at the VFW[2] in Pocomoke with Steven Mills, with whom she shared a year-long relationship. Townsend, whom K.W. had met once before, also attended the party that night. During the evening, K.W., who was not a frequent drinker, consumed at least two vodka cranberry drinks and "eight shots of vodka straight." Before leaving the party, K.W. got violently sick in the bathroom. The next thing she remembered was getting into the back seat of Townsend's vehicle. Townsend was in the driver's seat, a man named Herb was in the front passenger seat, and Mills sat next to her in the back passenger seat. K.W. then "blacked out." At some point, Mills jarred her awake and told her he was going to "leave [her] asleep in the back seat of the car" while he visited a bar. K.W. did not have her phone or her shoes, because Mills had placed those items in his car before they left the VFW.

K.W. next remembered waking up inside a strange trailer. She recalled arriving at the trailer, hitting her head on a "black cylinder thing" that was outside as she climbed the stairs, and then sitting on the couch while Townsend spoke with another man in the kitchen. The other man was "very blurry," and she could not see him clearly before she again fell asleep. She woke up to find Townsend between her thighs "biting [her] clitoris." When she asked him what he was doing, Townsend replied, "nothing," and told her he would take her back to Mills. K.W. went to the bathroom and got dressed, and then Townsend drove her back to her apartment. Mills' car was parked across the street. As K.W. exited Townsend's vehicle, he told her she could "make up something or lie" before speeding off. K.W. told Mills about what had happened, and he encouraged her to call the police. K.W. testified that she did not consent to any sexual activity with Townsend.

---

[2] The VFW is also known as the American Legion.

Mills confirmed that he and K.W. attended the party and that they were both intoxicated. Mills explained that before they left the VFW, K.W. vomited in the bathroom and sat on the floor, unable to stand up. He asked Townsend to give him and K.W. a ride home, but as they approached Mills' house, Townsend drove them to another bar instead. When they arrived, Herb and Mills went inside to use the restroom. When Mills returned to the parking lot, Townsend and K.W. were gone. A woman Mills encountered told him that Townsend drove away as soon as Mills went inside the bar. Mills repeatedly called and texted Townsend throughout the rest of the night but received no reply. The woman drove Mills and Herb to Herb's car, and Herb drove Mills back to his car. Mills returned to K.W.'s apartment and waited "to see if [Townsend] would bring her home." When K.W. arrived, she was "crying, hair all over her head and all upset."

Lanoun Peyton testified that Townsend has used his "place to chill with a chick . . . if [Peyton's] not home" and that Townsend arrived at his trailer late that night with K.W. Peyton thought they "seemed friendly with each other." Peyton told Townsend to lock up the house before he left, because Peyton had to leave. Although it appeared that Townsend and K.W. had been drinking, to Peyton it did not appear that either of them were drunk. When Peyton returned twenty or thirty minutes later, Townsend and K.W. were gone.

Accomack County Sheriff's Deputy Anthony Bright[3] took buccal swabs from Mills, and Lieutenant Joshua Marsh took a buccal swab from Townsend. Sexual Assault Nurse Examiner Tisha Grooms examined K.W. and collected a vaginal-cervical sample and a thigh "or external genitalia" sample and provided them to Lieutenant Marsh.

The trial court qualified forensic scientist Melissa Lucas as an expert in the field of forensic biology and DNA analysis. Lucas examined the two buccal swabs that law enforcement collected from Mills and Townsend and obtained DNA profiles for each swab. Lucas observed spermatozoa

---

[3] In March 2020, Bright was a Lieutenant of Investigations.

from K.W.'s vaginal-cervical sample and developed a "DNA mixture profile attributable to [K.W.], Steven Mills and one additional contributor . . . from the sperm fraction." Lucas also developed a DNA mixture profile from K.W.'s thigh and external genitalia sample and similarly found that the profile was "attributive to [K.W.], Mr. Mills and one additional contributor." Lucas compared Townsend's profile to the two mixture profiles and concluded that he could not be eliminated as the additional contributor. Lucas testified that for both samples, "the probability of randomly selecting an unrelated individual with a DNA profile matching the profile different from [K.W.] and Steven Mills that was developed from both of those samples is 1 in greater than 7.2 billion, which is approximately the world's population in the Caucasian, African-American and Hispanic populations."

The prosecution played and entered into evidence a recording of Lieutenant Marsh's interview with Townsend. After Lieutenant Marsh advised Townsend of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), Townsend changed his story several times. He first said that he took K.W. directly home from the bar and denied having any sexual contact with her. He then stated that they had consensual intercourse outside his car while Herb and Mills were inside the bar, but he denied going to Peyton's residence. He then "started over" and admitted that he took K.W. to the residence, but again said they engaged in consensual intercourse.

Townsend testified on his behalf at trial that he did not take advantage of K.W. or have sex with her when she was physically helpless or mentally incapacitated. He confirmed that he met K.W. once before. Townsend admitted that he took K.W. to Peyton's trailer and had sex with her there, but he claimed that she wanted to go with him, and he insisted the act was consensual. Townsend explained that in the trailer, he and K.W. were "talking about it and she started pulling her clothes off." He claimed that after they had intercourse, they both fell asleep. When K.W. awoke, Townsend took her home. Before driving away, Townsend asked K.W. what she was going

to tell Mills and she responded, "I don't know. I'll think of something." Townsend explained that he initially lied to the police because he was scared and "in shock."

At no point did Townsend move to strike the evidence of the rape following the Commonwealth's case-in-chief or after he rested. Thus, following jury instructions and closing arguments, the charge was submitted to the jury. The jury found Townsend guilty of rape.[4] This appeal follows.

ANALYSIS

Townsend argues that the evidence was insufficient to prove K.W. was so intoxicated as to be mentally incapacitated and incapable of consent. However, because he failed to make a motion to strike the rape charge, his assignment of error is waived, and we decline to invoke the ends of justice exception in Rule 5A:18 and instead affirm his conviction.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

In this case, Townsend expressly stated that he was not making a motion with respect to the rape charge after the Commonwealth rested its case, and following his testimony, he again did not

---

[4] The jury acquitted Townsend of sodomy.

make a motion to strike the rape charge on any stated grounds. Townsend also did not file a post-trial motion to set aside the verdict. He therefore failed to preserve his sufficiency argument for appeal. Acknowledging this, Townsend asks that we apply the ends of justice exception to Rule 5A:18 and reverse the judgment of the trial court.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Bass*, 292 Va. at 27 (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman*, 25 Va. App. at 221. Indeed, "[i]n order to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Id.* In order "to show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015) (quoting *Redman*, 25 Va. App. at 221-22).

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). The "exception requires proof of an error that was 'clear, substantial and material.'" *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App.

126, 132 (1989)). "Virginia courts applying the ends of justice exception require a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513). "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

Townsend has failed to carry his burden of proving a manifest injustice in this case. K.W. testified that she consumed at least two vodka cranberry drinks and eight shots of vodka before becoming violently ill in the bathroom at the VFW. Mills testified that K.W. could not stand up. Townsend admitted to police that K.W. was drunk and throwing up during the car ride to the bar. When Mills and Herb entered the bar, Townsend left without telling anyone where he was going and took K.W. to Peyton's trailer. K.W. bumped her head walking up the stairs and sat on the couch, watching through blurry eyes as Peyton and Townsend conversed. She then lost consciousness and when she awoke, she was alone with Townsend, her clothes were off, and Townsend's head was between her thighs. She did not consent to any sexual contact with Townsend and asked that he take her home. She was angry with Mills because she thought he might have had something to do with it. Mills had to show her the many calls and texts he sent to Townsend inquiring where he had taken her, all of which had gone unanswered. While she was unconscious, Townsend had sexual intercourse with her as evidenced by the fact that he could not be eliminated as a major contributor to the spermatozoa found inside K.W.'s vagina. Finally, Townsend changed his story several times, initially denying having had sex with K.W. and claiming that he took her straight home, before finally admitting that he took her to Peyton's trailer and had sex with her. These facts clearly support a finding that Townsend committed a criminal act—

rape—and that the elements of the offense were proved. Townsend had sexual intercourse with K.W. while she was mentally incapacitated and incapable of giving consent.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). With all credibility issues resolved by the jury, Townsend points to nothing in the record affirmatively proving that an element of the offense did not occur or that appellant was convicted for non-criminal conduct. Accordingly, the ends of justice exception does not apply and Rule 5A:18 bars our consideration of Townsend's claim on appeal that the evidence was insufficient to support his conviction.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed*.