# COURT OF APPEALS OF VIRGINIA

## Record No. 1400-24-1

TREVOR JACOB HERRIN

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Opinion Issued April 28, 2026[*]

## FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Jennifer L. Guiliano, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

A jury convicted Trevor Jacob Herrin of carrying a concealed weapon, a misdemeanor. The trial court sentenced Herrin to 30 days' incarceration. Herrin and his three co-defendants were acquitted of possessing a firearm on school property. Herrin contends that the trial judge erred in denying a recusal motion alleging that the judge had received unspecified threats and that the Commonwealth's evidence did not show that he knowingly carried a concealed weapon

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

without a permit.  We find that the record does not support Herrin's arguments and thus affirm the trial court's judgment.[2]

BACKGROUND[3]

Gloucester County Sheriff's Master Deputy Phil Lutz was on duty at the T. C. Walker Education Center in Gloucester, Virginia during a school board meeting on July 11, 2023.[4]  He saw a group of five people walk into the meeting and noticed that one person in the group, Herrin, "had a knife in the small of his back," "kind of tucked like the knife was holding the shirt, and [it] was horizontal."  When Herrin stood to speak during the "citizen comment period" of the school board meeting, Deputy Lutz "observed on [Herrin's] right side what appeared to be the handle of a firearm concealed."  Deputy Lutz "noticed a bulge through [Herrin's] shirt at the top where the handle of a firearm would be," and based on his training and experience he believed that it was a firearm.  When Herrin finished speaking and returned to his seat, Deputy Lutz saw that Herrin's "shirt lifted up and exposed the handle to a firearm."  The same five people then left the building.

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Fary v. Commonwealth*, 77 Va. App. 331, 341 (2023) (quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023)).  In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence.  *Barney*, 302 Va. at 97.  "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial."  *Id.* (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

[4] Because the acquittals are not before us in this appeal, we do not detail the evidence presented to determine whether the premises were "school property" for purposes of those offenses.  *See Blowe v. Commonwealth*, 72 Va. App. 457, 461 (2020) (summarizing only the facts pertinent to claim of error).

Deputy Lutz approached the group and asked about the firearm he saw. Herrin and three others ultimately admitted that they were carrying firearms. After some discussion, all four presented their pistols to Deputy Lutz. The other three defendants produced valid permits to carry a concealed weapon; there was no evidence that Herrin did so. Herrin was charged with carrying a concealed weapon and possessing a firearm on school grounds.

Shortly before trial, Herrin moved the trial judge to recuse himself.[5] Herrin's motion alleged that counsel for a co-defendant had been told by a sheriff's deputy that the judge "may have been advised" of unspecified "threats" made by "people 'ideologically aligned'" with Herrin and who "were affiliated with a protest that occurred" after Herrin's arrest. Herrin stated that he was "concerned" that those events "will create a bias towards the Defendants in these matters." Herrin also asserted that the same "matters" had "received extensive news coverage and have been the subject of numerous social media posts" regarding Herrin and the trial judge. He conceded that he could not "point to a particular apparent bias" but asked the trial judge to consider the "public perception" of the threat that he alleged had been made.

At the hearing on Herrin's motion, counsel repeated the same account of threats that allegedly were reported to the trial judge. But counsel conceded that "the Court knows what it was advised of; I do not. I will defer to Your Honor on that." The Commonwealth advised that it had no information "that any of the codefendants made any threats against this Court or any other court." Referring to a later protest at the T. C. Walker Education Center, it added that it was not "aware of any threats emanating from any of those individuals known or unknown against this Court or any other court."

---

[5] The other written motions, while acknowledged at the hearing, do not appear in the manuscript record before this Court.

The trial judge stated that he met "one or two months ago" with a prosecutor and a police investigator "that indicated there [were] some threats being made." "They didn't tell me the source of the threats because I did not want to know the source of the threats." The trial judge's own thought was that "the source of the threats were people who were incarcerated." He recalled "no reference made in any of that conversation that would connect any of the threats to this case in any manner whatsoever." He added that "[i]f anything was said about it, it went through one ear and out the other, because [he] had no inclination that any of the threats had anything to do with this case." The trial judge denied the motion.

At trial, Deputy Lutz testified to the facts recited above. The video recording from Deputy Lutz's body-worn camera was played for the jury and showed Herrin removing his pistol from his right hip, from under his shirt. The parties stipulated that the pistol that Herrin presented to Deputy Lutz was a "firearm" under the statute.

After the Commonwealth rested, Herrin moved to strike the evidence of possession of a firearm on school property. The trial court overruled the motion. Herrin presented no evidence at trial and renewed the motion to strike the evidence of possession of a firearm on school property, and the trial court overruled the renewed motion. Herrin made no motion to strike the evidence of his carrying a concealed weapon.

The jury acquitted Herrin (and his three co-defendants) of possessing a firearm on school property. It convicted Herrin of carrying a concealed weapon. Herrin made no motion to set aside the verdict. At sentencing, Herrin claimed for the first time that he had once had a permit to carry a concealed weapon, but that it expired "sometime in the summer or fall of 2021."

ANALYSIS

I. Recusal

In the absence of proof of any actual bias, an appellate court reviews a trial judge's denial of a motion to recuse himself "applying an abuse of discretion standard." *Wilson v. Commonwealth*, 272 Va. 19, 28 (2006). "[I]n making the recusal decision, 'the judge must be guided not only by the true state of his impartiality, but also by the public perception of his fairness, in order that public confidence in the integrity of the judiciary may be maintained.'" *Id.* (quoting *Stamper v. Commonwealth*, 228 Va. 707, 714 (1985)). The Supreme Court has "also suggested that the Canons of Judicial Conduct are instructive, although not determinative in our review of a judge's recusal decision." *Id.* (citing *Commonwealth v. Jackson*, 267 Va. 226, 229-30 (2004)). "[A] judge should recuse himself or herself whenever a reasonable person, with knowledge of all the facts of the case, would question the judge's impartiality." *Prieto v. Commonwealth*, 283 Va. 149, 164 (2012).

On brief, Herrin argues only that "in light of the constitutional, statutory, and ethical considerations by which the judge was bound, the judge should have recused himself." He identifies no error in the trial judge's findings or any specific circumstance that would require a different result under controlling law. Herrin fails to establish that a reasonable person would question the trial judge's impartiality.

The trial judge was unaware of any connection between the report of threats he had received and Herrin's trial. Herrin fails to establish any different public perception of the trial, as there is no evidence of the news coverage, public attention, and social media posts that Herrin alleged. Nothing in the record demonstrates that the public was aware of the threats. The defendants themselves became aware of the threats only days before the trial, and then only

through private conversations with law enforcement. The record establishes that the trial judge did not abuse his discretion in denying the motion to recuse.

II. Sufficiency

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Herrin concedes that his sufficiency arguments were not presented to the trial court but asks this Court to excuse his default under the "ends of justice" exception.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). "In determining whether the exception applies, the Court considers two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Id.* at 30 (quoting *Williams v. Commonwealth*, 294 Va. 25, 27-28 (2017)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 31 (quoting *Conley*, 74 Va. App. at 683).

"In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (alteration in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). "To demonstrate a miscarriage of justice, appellant 'must show that either the conduct for which he was convicted is not a criminal offense or that the record affirmatively establishes that an element of the offense did not occur.'" *Jiddou v. Commonwealth*, 71 Va. App. 353, 374 (2019) (quoting *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015)). "Arguing that the record is devoid of evidence of an element does

not equate with affirmative proof that an element did not occur." *Quyen Vinh Phan Le*, 65 Va. App. at 75 (footnote omitted).

Herrin was convicted under Code § 18.2-308(A)(i), providing that a person commits a Class 1 misdemeanor when he "carries about his person, hidden from common observation, (i) any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material[.]" Herrin does not argue that any element of the offense was not proven. He instead argues that the Commonwealth failed to exclude the possibility that he had a valid permit to carry a concealed weapon. But the Commonwealth had no burden to do so. In fact, it was Herrin's burden to establish that he had a valid permit to carry a concealed weapon on the date of the offense. "It shall be an *affirmative defense* to a violation of clause (i) regarding a handgun, that a person had been issued, at the time of the offense, a valid concealed handgun permit." Code § 18.2-308(A) (emphasis added).

As our Supreme Court has explained, none "of the exceptions in subsections B, C, or D [of Code § 18.2-308] serves as a negative element of the subsection A crime. Instead, these exceptions list affirmative defenses that a defendant must either raise or waive." *Myers v. Commonwealth*, 299 Va. 671, 678-79 (2021). *Myers* recognized that "requiring the Commonwealth to prove this negative would undermine the general prohibition intended by the legislature." *Id.* at 678 (quoting *Foley v. Commonwealth*, 63 Va. App. 186, 201 (2014)). Herrin's reliance on his interpretation of other statutory provisions is unavailing because that reliance ignores the express language in Code § 18.2-308 establishing the affirmative defense.

Herrin also argues that he "did not knowingly and intentionally violate Va. Code § 18.2-308" because he erroneously believed that "he possessed a lawful concealed weapon permit." The statute contains no such mens rea requirement, and Herrin cites no authority imposing one. "[T]he law is clear that the legislature may create strict liability offenses as it sees

fit, and there is no constitutional requirement that an offense contain a *mens rea* or *scienter* element." *Clayton v. Commonwealth*, 75 Va. App. 416, 421 (2022) (quoting *Esteban v. Commonwealth*, 266 Va. 605, 609 (2003)). "Thus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime." *Id.* We have regularly applied that rule to other offenses under Article 6.1. *Esteban* applied the rule to find that there was no scienter requirement in Code § 18.2-308.1 and that imposing strict liability better effectuated the statute's purpose to prevent the dangers inherent in bringing a firearm to a school. *Id.*; *see also Branch v. Commonwealth*, 42 Va. App. 665, 669 (2004) ("Neither Code § 18.2-308.2, nor its related statutes, contain a *scienter* or *mens rea* element for a conviction under that statute.").

Herrin has not established a grave injustice. He never undertook to meet his burden to show that the affirmative defense applied to him. Indeed, he has not produced even a copy of the only permit he claims to have had, which expired in 2021. Moreover, the statute under which he was convicted expressly limits the pertinent affirmative defense to a person that "had been issued, *at the time of the offense*, a *valid* concealed handgun permit." Code § 18.2-308(A) (emphases added). Herrin does not claim to have any grounds for that affirmative defense. Nor could Herrin show a grave injustice merely by alleging that the record is silent about an element of the offense. *Quyen Vinh Phan Le*, 65 Va. App. at 75. Herrin has not satisfied the "ends of justice" exception, so his arguments that the evidence was insufficient to sustain his conviction are waived. Rule 5A:18.

## CONCLUSION

The record supports the trial judge's denial of the recusal motion. The record does not provide sufficient grounds to apply the "ends of justice" exception to Herrin's failure to present

- 8 -

and preserve his sufficiency argument, and the argument is waived.  For these reasons, the trial court's judgment is affirmed.

*Affirmed.*