# CSX TRANSPORTATION, INC.

v.

# PATRICK W. CASALE

Record No. 930275

February 25, 1994

Present: All the Justices

*John M. Oakey, Jr. (James L. Sanderlin; Scott C. Oostdyk; McGuire, Woods, Battle & Boothe,* on briefs), for appellant.

*Raymond H. Strople (Willard J. Moody, Sr.; Joseph J. Perez; Moody, Strople & Kloeppel,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In February 1990, plaintiff Patrick W. Casale was working for his employer, defendant CSX Transportation, Inc., as a communications maintainer repairing telephone wires that crossed the Roanoke River

near Weldon, North Carolina. While the plaintiff was at the top of a 60-foot pole helping to secure broken wires, a boat navigating the river unexpectedly snagged two wires hanging just above the water. This caused the pole to whip, injuring the plaintiff.

In May 1991, the plaintiff filed the present action against CSX under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, seeking recovery in damages for his injuries. After a five-day trial, a jury found in favor of the plaintiff and fixed his damages at $1.3 million. The jury also found that plaintiff's negligence contributed to his injuries to the extent of ten percent. Therefore, the trial court entered judgment on the verdict in the amount of $1.17 million.

We awarded the defendant this appeal, limited to consideration of the following issues: Whether the trial court improperly allowed hearsay testimony; whether the court erred in instructing the jury on loss of future wages; whether plaintiff's counsel engaged in improper closing argument; and whether the verdict was excessive in amount. Because of the view we take of the case, we shall discuss only the hearsay and wage loss questions.

The hearsay issue arose in the following manner. Although there was a dispute over the nature and extent of the plaintiff's accident related injuries, he presented testimony showing that he sustained "a significant soft tissue injury from the whiplash of being up on the pole," a "severe lumbosacral strain," a "chronic strain in his sacroiliac joint" and "bulge" of a lumbar disc, and traumatic arthritis secondary to the joint injury. There was testimony that some of these injuries were permanent and would prevent the plaintiff from performing his duties as a communications maintainer in the future.

The plaintiff was examined and treated by numerous physicians during the period between the accident and the trial, not all of whom testified. One who did not testify was a Dr. Isaacs, a neurologist.

The plaintiff called Dr. Arthur Wardell, an orthopedic surgeon, who testified during direct examination about his diagnosis of plaintiff's injuries. Later during direct examination, Wardell was permitted to testify, over defendant's objection, as follows: "Dr. Isaacs' diagnosis was similar: Thoracic lumbar strain or low back strain. He also thought that — He also made the diagnosis of a lateral femoral cutaneous nerve injury. That's a nerve which supplies the sensation to a good part of the thigh." The defendant contends that admission of this testimony was reversible error. We agree.

A medical expert's recital of the confirming opinion of an absent physician is inadmissible hearsay. *McMunn v. Tatum,* 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989). Although Code § 8.01-401.1

authorizes admission into evidence of an expert's opinion that may be based in whole or in part upon inadmissible hearsay, "the statute does *not* authorize the admission of any hearsay opinion on which the expert's opinion was based." *Todd* v. *Williams,* 242 Va. 178, 181, 409 S.E.2d 450, 452 (1991). This is because "admission of hearsay expert opinion without the testing safeguard of cross-examination is fraught with overwhelming unfairness to the opposing party. No litigant in our judicial system is required to contend with the opinions of absent `experts' whose qualifications have not been established to the satisfaction of the court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination." *McMunn,* 237 Va. at 566, 379 S.E.2d at 912.

We reject the plaintiff's contention that admission of the hearsay was harmless error. The plaintiff argues that the Isaacs diagnosis did not prejudice the defendant because it "was similar to other medical testimony already on record" showing that the plaintiff "did have a lumbar strain" and that he "might have a nerve injury." Also, plaintiff says that "the statement of Dr. Wardell that Dr. Isaacs made a diagnosis of a lateral femoral cutaneous nerve injury is of no consequence when the entire record and all the medical evidence is reviewed." We disagree.

There was no other testimony reciting a diagnosis of "lateral femoral cutaneous nerve injury." It is true there was testimony the plaintiff complained of "some numbness in the left thigh area" that "suggested irritation of some of the nerve roots;" testimony the plaintiff "had a little bit of decreased strength in one of the muscle groups in his legs" indicating "severe irritation of one of the nerve roots;" and testimony about the bulging of a lumbar disc. But the medical evidence on the subject of nerve injury was hotly contested. Even the plaintiff's physicians were not in agreement on the issue, one indicating "there is no nerve root involved in his problem."

In order to constitute reversible error, a trial court's ruling "must be material and prejudicial to the interests of the party complaining of it." *Taylor* v. *Turner,* 205 Va. 828, 831, 140 S.E.2d 641, 643 (1965); Code § 8.01-678. Under the circumstances of this case, admission of the hearsay introducing a new and different diagnosis into the case was material and prejudicial to the railroad's defense on the issue of damages.

Because the foregoing error will require a remand, we shall discuss the wage loss issue, which may arise upon a retrial. The plaintiff presented evidence about his rate of pay at the time of the accident, general wage increases to which he would be entitled, cost of living

increases due him in the future, and his "fringe benefits," including health benefits and retirement pay. In the general instruction on damages, the trial court permitted the jury, in fixing the damages, to consider "any loss of earnings, fringe benefits, and lessening of earning capacity, or either, that [the plaintiff] may reasonably be expected to sustain in the future."

On appeal, the defendant contends that the trial court erred in instructing the jury on future lost wages because the plaintiff "offered no evidence from which the jury could reduce the amount to present value without random speculation." Elaborating, the defendant maintains that the plaintiff had the burden, which he failed to discharge, to present evidence of "projected future interest rates," of "future railroad industry wage rates," or other "economic and wage evidence," to guide the jury in reducing any lump sum award to present value.

■ The propriety of jury instructions concerning the measure of damages in a FELA action is a matter of federal substantive law. *St. Louis Southwestern Ry.* v. *Dickerson,* 470 U.S. 409, 411 (1985). Upon request, a FELA defendant is entitled to an instruction that "when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only." *Chesapeake & Ohio Ry.* v. *Kelly,* 241 U.S. 485, 491 (1916).

The jury in the present case was given such an instruction, taken verbatim from *Dickerson,* 470 U.S. at 410, as follows:

> "If you find in favor of the plaintiff and decide to make an award for any loss of earnings in the future, you must take into account the fact that the money awarded by you is being received all at one time instead of over a period of time extending into the future and that the plaintiff will have the use of this money in a lump sum. You must, therefore, determine the present value or present worth of the money which you award for such future loss."

The reason for such an instruction is that when a verdict is based upon the deprivation of future benefits, it will provide more than reasonable compensation if it is formed by merely aggregating the benefits without taking into account "the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future." *Kelly,* 241 U.S. at 489.

■ Recognizing that the calculation of present value "may be a difficult mathematical computation" for the average juror to make, the

Supreme Court has said that the procedural and evidentiary law of the forum should determine whether "the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life." *Id.* at 491. The Court has stated, however, that the "average accident trial should not be converted into a graduate seminar on economic forecasting." *Monessen Southwestern Ry.* v. *Morgan,* 486 U.S. 330, 341 (1988) (quoting *Jones & Laughlin Steel Corp.* v. *Pfeifer,* 462 U.S. 523, 548 (1983)) (internal quotations omitted).

The parties to this appeal agree on the state of the federal law on the basic issue. They disagree, however, on who has the burden of proof in this area. The defendant argues that the burden is upon the plaintiff and, because the plaintiff offered no present value evidence, the trial court erred in permitting the jury to allow any recovery for future wage loss. The plaintiff, conceding that it offered no evidence of present value, maintains that the burden was on the defendant to put on such evidence. The trial court did not specify which party had the burden in this case.

To date, the Supreme Court has not decided the issue, and the federal circuit courts are in conflict on the question. *See, e.g., Gorniak* v. *National R.R. Passenger Corp.,* 889 F.2d 481, 486 (3rd Cir. 1989) ("the law of this circuit places the burden on the plaintiff to produce evidence permitting a rational reduction to present value"); *Alma* v. *Manufacturers Hanover Trust Co.,* 684 F.2d 622, 626 (9th Cir. 1982) (party benefitting from application of particular economic formula has burden to prove it; defendant must establish discount rate; plaintiff must establish inflation rate when plaintiff claims amount to be awarded must be adjusted for price inflation). *See generally* Note, *Future Inflation, Prospective Damages, and the Circuit Courts,* 63 Va. L. Rev. 105 (1977). The Fourth Circuit has not definitively decided the issue. *See Aldridge* v. *Baltimore & Ohio R.R.,* 789 F.2d 1061, 1067 (4th Cir. 1986), *aff'd on reh'g en banc,* 814 F.2d 157 (4th Cir. 1987), *vacated and remanded sub nom. Chesapeake & Ohio R.R.* v. *Aldridge,* 486 U.S. 1049 (1988), *on remand en banc, Aldridge* v. *Baltimore & Ohio R.R.,* 866 F.2d 111 (4th Cir. 1989). Therefore, without the availability of a controlling and explicit federal ruling, we must establish the rule to be applied in state courts in Virginia.

We discern some guidance from the Supreme Court; it has treated the present value question as one in the nature of mitigation of damages. The Court said in *Kelly,* discussing the present value con-

cept: "Ordinarily a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages." 241 U.S. at 489. Likewise, this Court has treated the reduction in a claim for damages in an analogous situation as being in the nature of mitigation. In *Lee* v. *Bell,* 237 Va. 626, 630, 379 S.E.2d 464, 467 (1989), noting that a defendant has the burden of proof upon mitigation of damages, we placed the burden upon a defendant to go forward with evidence that a plaintiff's damages should be reduced when the defendant claimed the plaintiff was receiving a special advantage arising from the defendant's wrongful conduct. Although reduction to present value of a claim for future lost wages is not a pure mitigation of damages issue, it is a comparable idea.

Therefore, we hold that the following rules should apply. Of course, the plaintiff has the ultimate burden of proof upon the quantum of damages. And, a FELA plaintiff establishes a prima facie case for recovery of future lost wages by presenting evidence of, for example, projected wage loss, fringe benefits to be lost in the future, and life expectancy if there is a permanent injury. But, a defendant seeking reduction to present value of a sum awarded for future lost wages has the burden of going forward with evidence to enable the fact finder to make a rational determination on the issue. Indeed, fairness dictates that a defendant entitled to the benefit of a *Dickerson* instruction, *supra,* should have the burden of presenting evidence to enable it to reap such benefit.

In the present case, because the defendant failed to introduce such evidence, the trial court correctly rejected defendant's effort to eliminate the plaintiff's future lost wage claim.

Consequently, the judgment below will be reversed for admission of the hearsay testimony, the case will be remanded for a new trial limited to the issue of damages only, and whatever verdict the plaintiff may receive at a new trial shall be reduced by ten percent because of the plaintiff's contributory negligence.

*Reversed and remanded.*