PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

RUTH E. CHANDLER, ET AL.

                                          OPINION BY
v.  Record No. 030665   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                       November 5, 2004
CHARLES S. GRAFFEO, M.D., ET AL.


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                        Von L. Piersall, Jr., Judge

     In this appeal from a judgment in a medical-malpractice

action, we determine whether the trial court erred in:  (1)

admitting into evidence the opinion of a Medical Malpractice

Review Panel (the Panel) and the testimony of two Panel members

thereon when the Panel's decision was rendered beyond the

timeframe set forth in Code § 8.01-581.7:1; (2) permitting

testimony from two Panel members as the defendants' retained

experts after they had rendered a Panel opinion in the

defendants' favor; (3) granting jury instructions on the issue

of contributory negligence; (4) refusing to grant a jury

instruction regarding concurring negligence; and (5) allowing

the defendant-physician to recite the opinion of a non-

testifying physician.

                                  I

     This action was brought by Ruth E. Chandler and Toinette M.

Hurt (collectively, Chandler), as co-administrators of the

Estate of Robert H. Fields, against Charles S. Graffeo, M.D.,

and his employer, Emergency Physicians of Tidewater, Inc. (Emergency Physicians) (collectively, the Defendants).[1] Chandler alleged that the Defendants' medical negligence led to Fields' death. Fields had died from a ruptured thoracoabdominal aortic aneurysm.

On February 27, 2001, this Court designated the members of the Panel, and the Panel rendered its decision on September 4, 2001, more than six months after its designation. The Panel opined that the evidence did not support a conclusion that Dr. Graffeo and Emergency Physicians had failed to comply with the appropriate standard of care.[2] Chandler did not participate in the Panel proceeding.

The case was tried before a jury, which returned a verdict in favor of the Defendants. The trial court entered judgment on the verdict, and this appeal ensued.

II

A brief summary of the underlying facts will suffice. Additional facts will be recited as they relate to the several issues under consideration.

---

[1] Named defendants, Portsmouth General Hospital and Thomas W. Wagner, M.D., were nonsuited, and named defendants, Ronald L. King, M.D., and his employer, Medical Center Radiologists, Inc., settled with Chandler prior to trial.

[2] The Panel further found that Medical Center Radiologists, Inc., and Ronald L. King, M.D., had failed to comply with the appropriate standard of care, but that such failure was not a proximate cause of Fields' death.

On September 4, 1997, Fields was admitted to Maryview Medical Center (Maryview) in Portsmouth, complaining of sharp, mid-sternal chest pain, abdominal pain, and numbness in both legs. During his five-day hospital stay, Fields underwent numerous tests, none of which provided a definitive diagnosis. On September 9, 1997, Fields was discharged from Maryview with instructions to follow up with a nephrologist to evaluate renal insufficiency of an unknown origin.

Fields' pains persisted, and, on September 11, 1997, he presented to Portsmouth General Hospital's emergency room. There, Fields stated that his back and stomach area "hurts." He also complained of chest pain and "bilateral flank pain, right greater than left, that extend[ed] down towards his lower abdomen."

Dr. Thomas W. Wagner saw Fields in the emergency room. Dr. Wagner ordered radiological tests to rule out abdominal aortic aneurysm and placed Fields under the care of Dr. Graffeo.

Dr. Graffeo diagnosed Fields as suffering from a non-dissecting lower thoracoabdominal aortic aneurysm. Fields' pains subsided, and Dr. Graffeo discharged Fields from the hospital with instructions to see Dr. Keith H. Zaitoun, a nephrologist, the following day, September 12th.

Fields endeavored to schedule the appointment with Dr. Zaitoun as directed, but he was informed that September 17th was

the earliest available appointment.  On September 15, 1997,

Fields collapsed at his home and was pronounced dead after

emergency resuscitation efforts were unsuccessful.

III

We first consider whether the trial court erred in

admitting into evidence the Panel's opinion and its members'

testimony thereon.  Code § 8.01-581.7(A) provides that a panel

shall, after receiving all the evidence and after joint

deliberation, render an opinion within 30 days.  Code § 8.01-

581.7:1 provides:

> Unless the parties otherwise agree, any opinion
> of the panel shall be rendered no later than six
> months from the designation of the panel unless the
> judge shall extend the period one time, not to exceed
> ninety days, upon a showing of extraordinary
> circumstances.  If the opinion of the panel is not
> rendered within the time provided, any panel opinion
> rendered subsequently shall be inadmissible as
> evidence unless the failure of the panel to render a
> decision within the time provided was caused by delay
> on the plaintiff's part.

On February 27, 2001, this Court designated the Panel

members to review this case, and a Panel hearing was originally

scheduled for May 25, 2001.  The trial court, however, cancelled

this date because Dr. Ronald L. King, then a defendant and Panel

witness, was scheduled to be "out of the country" at that time.

When the hearing date was cancelled, nearly three months of the

six-month statutory period remained.  Nevertheless, the court,

without any explanation at the time, reset the hearing for

4

September 4, 2001, eight days beyond the six-month statutory period.  The parties did not agree to the extension, and Chandler had nothing to do with any delay or scheduling of the hearing beyond the six-month period.

Prior to trial, Chandler moved to have excluded the Panel's opinion and the members' testimony thereon.  The trial court considered this motion on October 8, 2002, one week prior to trial.  On that date also, the Defendants, for the first time, moved the court, after the fact, to extend the time for the Panel hearing.

By order entered October 21, 2002, "nunc pro tunc to October 28, 2002," the court denied Chandler's motion to exclude and granted the extension for the Panel hearing.  The court found that "there was a showing of extraordinary circumstances in existence, thereby allowing the Court to extend the time for the panel to convene, not to exceed 90 days."  The extraordinary circumstances, according to the court, were that Dr. King was out of the country and unavailable for the May 25th hearing date and that "the date most convenient to the Court and the Panel Members was September 4, 2001."

We find nothing in the record to support the trial court's finding that extraordinary circumstances existed to justify setting the Panel hearing date beyond the statutory six-month period when, at the time of the extension, nearly three months

5

of the period remained.  The court does not explain why the hearing could not have been conducted within the six-month period.  We hold, therefore, that the trial court erred in admitting into evidence the Panel's opinion and its members' testimony thereon.

IV

We next consider the Panel members' testimony as Defendants' retained experts.  Chandler contends that the trial court erred in permitting "trial testimony from two [Panel] members as defendants' retained experts and as panel members, after they had rendered panel opinions in defendants' favor."

Pursuant to Code § 8.01-581.3, a panel shall be composed of two "impartial attorneys," two "impartial health care providers," and a judge of the circuit in which the action is filed who presides over the panel but does not vote.  After an opinion is issued, it "shall be admissible as evidence," and "[e]ither party shall have the right to call, at his cost, any member of the panel, except the judge, as a witness.  If called, each witness shall be required to appear and testify."  Code § 8.01-581.8.  Code § 8.01-581.1 defines "impartial health care provider" as

> a health care provider who (i) has not examined, treated or been consulted regarding the claimant or his family; (ii) does not anticipate examining, treating, or being consulted regarding the claimant or his family; or (iii) has not been an employee, partner

6

or co-proprietor of the health care provider against whom the claim is asserted.

In the present case, after the Panel proceeding, the Defendants retained as experts former Panel members Karsten F. Konerding, M.D., a radiologist, and Francis E. Watson, M.D., an emergency room physician, to examine "additional materials" and to testify on behalf of the Defendants at trial. When these former Panel members testified at trial, the Defendants' counsel presented them as having been appointed by the Chief Justice of this Court to serve on the Panel and as having taken an oath to examine the claims impartially.

The Defendants assert that the Panel members "were appointed by this Court, took the Oath and rendered a fair and impartial opinion and came to trial to testify regarding that process and their opinions. They were paid for their additional services, as allowed by statute, and testified that their individual opinions had not changed by review of additional material."[3] Chandler counters that "[i]t cannot reasonably be asserted that a party calling the Panel member 'at his cost' grants any party the right to convert the impartial Panel member

---

[3] At trial, Dr. Konerding testified only regarding the Panel proceeding and the Panel opinion. Dr. Watson testified that, after the Panel proceeding, he considered additional materials in the form of depositions and that nothing therein had changed his opinion from that rendered as part of the Panel.

into a retained expert with additional duties and work beyond and outside the scope of the Panel proceeding."

We agree with Chandler.  We find nothing in the statutory scheme respecting a panel's procedures that gives either party the right to retain an impartial panel member as an expert.  In addition, we think that the impartiality required by Code § 8.01-581.3 must remain through the conclusion of the trial. Indeed, impartiality would become an impossibility if either party were permitted to retain panel members as experts because no potential panel member would be without any anticipation concerning future consultation regarding the claimant or his family.  Moreover, the panel members' appointment to and service on the panel would tend to clothe the expert, in the jury's view, with superior qualifications and greater credibility.

We hold, therefore, that the trial court erred in permitting the Panel members to testify as the Defendants' retained experts.  Their testimony violated the intent and spirit of the statutory scheme; i.e., the impartiality of the Panel proceeding.[4]

V

---

[4] Chandler also contended that the Defendants' Designation of Expert Witnesses did not sufficiently disclose that the Panel members had been retained as Defendants' experts.  In light of the other rulings set forth in the present opinion, it is not necessary to address this issue.

8

We now consider whether the trial court erred in instructing the jury on contributory negligence and in refusing to instruct the jury on concurring negligence. As previously noted, Fields presented to the emergency room of Portsmouth General Hospital on September 11, 1997. While there, Fields came under the care of Dr. Graffeo, who diagnosed a "non-dissecting 4 cm lower thoracoabdominal aneurysm" and "a small amount of left pleural fluid." According to Dr. Graffeo, there was nothing emergent about Fields' condition. Accordingly, Dr. Graffeo discharged Fields from the hospital with instructions to follow up the next morning with Dr. Zaitoun. Fields endeavored to secure an appointment with Dr. Zaitoun the following morning, but Dr. Zaitoun could not see Fields until September 17. Fields died of a ruptured abdominal aortic aneurysm on September 15, 1997.

The Defendants contend that Fields was contributorially negligent for not seeing Dr. Zaitoun the following morning. Chandler asserts, to the contrary, that Fields' conduct was not negligent, and that, even if it were, it was not contemporaneous with Dr. Graffeo's negligence. We agree with Chandler.

To constitute contributory negligence in a medical-malpractice case, a plaintiff's negligence must be contemporaneous with the claimed defendant's negligence. Sawyer v. Comerci, 264 Va. 68, 75, 563 S.E.2d 748, 753 (2002);

9

*Ponirakis v. Choi*, 262 Va. 119, 125, 546 S.E.2d 707, 711 (2001); *Gravitt v. Ward*, 258 Va. 330, 335, 518 S.E.2d 631, 634 (1999); *Eiss v. Lillis*, 233 Va. 545, 552, 357 S.E.2d 539, 543 (1987); *Lawrence v. Wirth*, 226 Va. 408, 412-13, 309 S.E.2d 315, 317-18 (1983). We conclude that the record is devoid of any evidence suggesting that Fields was negligent. Clearly, there was no evidence of any negligence by Fields that was contemporaneous with Dr. Graffeo's negligence in discharging him from the hospital. Dr. Graffeo did not think Fields' condition was life threatening, and Fields, a layman, cannot be expected to know otherwise. We hold, therefore, that the trial court erred in granting the jury instructions on contributory negligence. *See Sawyer*, 264 Va. at 75-76, 563 S.E.2d at 753.

Regarding concurring negligence, Chandler asserts that the evidence showed that both Dr. King and Dr. Graffeo were negligent. We do not agree.

The Panel opinion served as the sole expert evidence regarding Dr. King's deviation from the standard of care. This evidence was insufficient to establish Dr. King's negligence because it would have left the jury to speculate regarding the appropriate standard of care. *See Raines v. Lutz*, 231 Va. 110, 114, 341 S.E.2d 194, 197 (1986). In cases such as this,

10

evidence of negligence must come from other expert testimony.[5]
We hold, therefore, that the trial court properly refused to
grant a jury instruction regarding concurring negligence.

                                VI

     Finally, we consider whether the trial court erred in
permitting Dr. Graffeo to recite the opinion of Dr. Zaitoun, a
non-testifying expert.  At trial, over Chandler's hearsay
objection, Dr. Graffeo was permitted to testify that he had
described Fields' condition and symptoms to Dr. Zaitoun and that
Dr. Zaitoun had agreed that it was safe to discharge Fields from
the hospital.  Dr. Graffeo asserts that Dr. Zaitoun's opinion
was not hearsay because it was not introduced to prove the truth
of the assertion.

     We have described hearsay evidence as

     "evidence which derives its value, not solely from the
     credit to be given the witness on the stand, but in
     part from the veracity and competency of some other
     person.  It is primarily testimony which consists in a
     narration by one person of matters told him by
     another.  A clear example of hearsay evidence is where
     a witness testifies to the declaration of another for
     the purpose of proving the facts asserted by the
     declarant."

Wright v. Kaye, 267 Va. 510, 530, 593 S.E.2d 307, 318 (2004)
(quoting Williams v. Morris, 200 Va. 413, 416-17, 105 S.E.2d

---

[5] The Panel opinion found that Dr. King's failure to comply
with the appropriate standard of care was not a proximate cause
of Fields' death.  Therefore, there was no expert evidence
regarding proximate cause.

829, 832 (1958)).  We have also said that " '[n]o litigant in our judicial system is required to contend with the opinions of absent "experts" whose qualifications have not been established to the satisfaction of the court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination.' "  CSX Transportation v. Casale, 247 Va. 180, 183, 441 S.E.2d 212, 214 (1994) (quoting McMunn v. Tatum, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989)).

We find no other reason for introducing Dr. Zaitoun's opinion than to bolster Dr. Graffeo's testimony to prove that he had complied with the appropriate standard of care.  We hold, therefore, that the testimony constituted inadmissible, prejudicial hearsay, which was not subject to cross-examination, and that the trial court erred in permitting Dr. Graffeo to recite it.

VII

For the reasons stated, we will reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

JUSTICE AGEE, with whom JUSTICE KEENAN joins, concurring in part and dissenting in part.

I concur in the majority opinion, except as to Part IV. Because I conclude that the trial court did not err in

12

permitting "trial testimony from two [Panel] members as defendants' retained experts and as [P]anel members, after they had rendered panel opinions in defendants' favor," I respectfully dissent as to Part IV of the majority opinion.

The statutory framework for Medical Malpractice Review Panels, Code § 8.01-581.1, et. seq., defines the "impartial health care provider." No question has been raised in this case that the physicians at issue, Drs. Konerding and Watson, fulfilled all requirements of an impartial health care provider at the formation of the Panel, during its deliberations, and in the rendering of its opinion. Nothing in the statutory scheme regulates the "impartiality" of a Panel member thereafter.

It is without question that Panel members can be called as witnesses at trial and testify as to the Panel opinion. "Either party shall have the right to call, at his cost, any member of the panel, except the judge, as a witness." Code § 8.01-581.8. In fact the Panel member is "required to appear and testify" if so called, and the party who calls him must pay the member's cost.

However, once the Panel has been selected, heard and considered the evidence, and rendered its opinion, the statutory basis for impartiality ceases. Clearly, at this point, the Panel members have formed an opinion about the evidence and are subject to being called by a party as de facto experts. The

13

impartiality requirement will have already ensured that the Panel reached its decision fairly and objectively, but it is not intended to constrain that the members forever remain impartial. Thereafter permitting the retention of Panel members as experts does not contradict the statutory requirement of impartiality.

Code § 8.01-581.20, which sets forth witness qualifications to testify as an expert, does not disqualify a witness based upon Panel participation. Indeed, the Panel's work (other than testimony at trial upon their previously rendered opinion) must be done before the Panel member could be retained for any additional services. Nothing in the statutory scheme prohibits the additional step, should a party chose to do so, of retaining a Panel member as an expert witness to testify at trial on matters beyond the Panel opinion, once that opinion has been rendered. Any conflict or bias on the part of the Panel member by virtue of his post Panel work is addressed through the normal venue of cross-examination should the member be called to testify at trial.

The majority opinion writes a judicial amendment to the statutory definition of impartial health care provider by adding post-Panel prohibitions on service as a retained expert witness. While such a prohibition may be preferred public policy, it is not within the written statute. If such a prohibition is to be enacted, it is for the General Assembly to promulgate and not

14

the judiciary. Courts cannot "add language to the statute the General Assembly has not seen fit to include." Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003) cert. denied, ___ U.S. ___, ___ S.Ct. ___ (2004). "[N]or are they permitted to accomplish the same result by judicial interpretation." Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (internal quotation marks omitted).

I would hold, therefore, that the trial court did not err in permitting the former Panel members to testify as the defendants' retained experts. Accordingly, I respectfully dissent as to Part IV of the majority opinion.