COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


NATHANAEL ZECHARIAH FAUST

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1345-22-2                 JUDGE DOMINIQUE A. CALLINS
                                                         MARCH 5, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Stephen A. Mutnick (Winslow, McCurry & MacCormac, PLLC, on
briefs), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Nathanael Faust was convicted of one count of attempted rape and

five counts of aggravated sexual battery.[1]  Faust contends that the trial court erred by denying his

motion to strike a juror for cause.  He also assigns error to certain evidentiary rulings and to the trial

court's refusal to instruct the jury on assault and battery.  Additionally, Faust challenges the

sufficiency of the evidence supporting his convictions.  Finding no error, we affirm the trial court's

judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury acquitted Faust of two counts of rape and one count of sodomy.

BACKGROUND[2]

Anthony Cohen met Faust in 2017 at a church event in Atlanta. The two became friends and worked together on video projects for the church. Eventually, Cohen invited Faust to move into Cohen's home in Chesterfield County, Virginia, which Faust did in September 2017.

Cohen lived with his wife, their seven children, and Cohen's parents. Cohen ultimately moved Faust into a room upstairs with the other adults and created a "bunk room" for the children in a spare first floor room. A.C., eleven years old at the time, slept in the bunk room, along with her younger brothers, and her cousin, J.M.[3] J.M., who was the same age as A.C., homeschooled at the Cohen house with A.C. and stayed there overnight.

Approximately a year after Faust's arrival, Cohen noticed changes in A.C.'s and J.M.'s behavior. A.C.'s schoolwork was "terrible," and she appeared "very tired all the time." Whenever A.C. encountered Faust, she folded her arms across her chest and walked away. J.M. became similarly hostile toward Faust. Cohen noticed that Faust also appeared to be frequently tired, and in contrast to his initial congenial behavior, he became "defian[t]" and "disrespectful."

A.C.'s grandmother noticed that Faust devoted more attention to the girls in the family than to the boys and was concerned about his interactions with A.C. On one occasion, her grandmother heard A.C. "screaming" from her bedroom and found Faust lying in bed next to A.C. A.C. told her grandmother that Faust was "touching [her] leg." The grandmother's husband recalled encountering Faust exiting A.C.'s room late at night and putting on his shirt.

---

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] Initials are used to protect the victims' privacy. *See Poole v. Commonwealth*, 73 Va. App. 357, 360 n.1 (2021).

When asked why he was in A.C.'s bedroom, Faust explained that he was "looking for his shirt." On other occasions, the husband heard the floors creaking in A.C.'s room between 3:00 to 4:00 a.m.

During her senior year of high school in 2018, J.M.'s older sister stayed overnight occasionally with J.M. and A.C. in the downstairs bedroom. The older sister saw Faust "[s]ometimes" "peep his head in" the room between 1:00 and 2:00 a.m. On another occasion, she saw Faust leaving the bedroom between 5:00 and 7:00 a.m. The older sister recalled that, when Faust first moved in, both girls had "played" with him, but as time passed, they avoided touching or hugging him.

Cohen directed Faust to stop interacting with or touching A.C., though Cohen did not accuse Faust of inappropriate behavior. But in late March 2019, Cohen asked Faust to move out after Faust disregarded Cohen's admonition against interacting with A.C. After seeing a U-Haul truck pulled up in front of the house, J.M. asked Cohen why the truck was there. Cohen replied that Faust was leaving. In response, J.M. asked, "Is it because he touched us?" After, Cohen questioned J.M. and A.C. about Faust and then called the police. Ultimately, both girls disclosed that Faust had been sexually assaulting them over the course of the two years that he lived with the Cohen family.

At trial, A.C. testified that Faust entered her bedroom at night and touched "[her] private part area" with his hands more than three times and "used his private part area and touched [hers]." The "touching" began a couple of months after Faust moved in and continued while Faust lived there. A.C. also testified that, while in Faust's bedroom watching anime, Faust "put his private part into" her backside. A.C. reported the abuse to her grandmother and asked her grandmother to speak with her father. After her grandmother talked to her father, he called the police.

J.M. acknowledged that Faust touched her "private area between [her] legs with his hand" and testified that he "touch[ed] and rub[bed]" her chest. She described the contact with her chest as "uncomfortable" and the contact between her legs as "[v]ery, extremely uncomfortable." J.M. stated that Faust touched her on top of and beneath her clothing. She recalled that he first touched her "private area" "[a] year or two" before his arrest. J.M. testified that Faust touched her chest or her "private area" approximately a week before his arrest. Both incidents occurred at night while J.M. was in bed. J.M. awakened one night after hearing "noises" to find Faust on top of A.C. with his pants and underwear off. She described Faust's interaction with A.C. as "sexual contact." A.C.'s pants and underwear were "pulled down" and Faust's "private part was inside" A.C.'s "private part." J.M. "screamed lightly," prompting Faust to grab his pants and run out of the bedroom.

Over Faust's objection, social worker Marcella Rustioni testified as an expert in "delayed reporting and the dynamics of child abuse." Rustioni cited several reasons that a child might not disclose sexual abuse "right away." She noted that children "sometimes" delayed reporting abuse because they feared "get[ting] into trouble," or because the abuser was a family member to whom they were attached. Rustioni also cited fear of harm, shame, and embarrassment as reasons a child might delay reporting the abuse. She stated that children who had been "allegedly abused multiple times" might experience difficulty recalling "specific details about specific instances," and even children over ten years old might have difficulty recalling specific dates without a "meaningful" event to provide context. Moreover, a child's ability to recall specific dates could be further hampered if they suffered from developmental delays or cognitive limitations. Rustioni testified that children who suffered abuse sometimes displayed behavioral or emotional changes; but she cautioned that abused children often had "normal interactions" with their abuser.

Faust testified in his own defense.  He admitted that he occasionally hugged A.C. and J.M. and "touch[ed] a shoulder or something," but denied behavior consistent with sexual assault.  Faust denied that he was ever alone with A.C. or J.M.  He also denied that Cohen ever forbade him from touching A.C. or entering the girls' bedroom.  Faust acknowledged that he occasionally entered the girls' bedroom in the early morning hours to retrieve his shoes before leaving for work because "[t]here was an overflow of shoes" from the foyer into the makeshift bedroom area.  But he denied that he ever touched the girls inappropriately when he entered the room.

At the conclusion of the evidence, Faust moved to strike the attempted rape and aggravated sexual battery charges.  The trial court denied Faust's motion.  Faust appeals.

ANALYSIS

I.  Motion to Strike Juror for Cause

Faust contends that the trial court erred by refusing to strike Juror "S" for cause because her answers during voir dire demonstrated that, as a survivor of abuse, she was biased in favor of the prosecution.  Consequently, Faust concludes that there was a reasonable doubt regarding her ability to be impartial and "it was manifest error to fail to remove her for cause."  We disagree with Faust's conclusion and hold that it was not manifest error for the trial court to refuse to strike Juror S for cause.

> Given that the trial court is "able to see and hear each member of the venire respond to questions posed" during *voir dire*, it "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath."

*Brown v. Commonwealth*, 68 Va. App. 746, 784 (2018) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)).  From this, it follows that "[j]uror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal."  *Id.* (quoting

- 5 -

*Lovos-Rivas*, 58 Va. App. at 61). "Accordingly, the decision to retain or exclude a prospective juror 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Lovos-Rivas,* 58 Va. App. at 61 (quoting *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001)).

As a matter of constitutional guarantee, a defendant is entitled to an impartial jury. *Webb v. Commonwealth*, 11 Va. App. 220, 222 (1990). But an impartial jury does not equate to one devoid of personal life experience, including experience similar to that a prospective juror may confront in the course of trial. *See id.* at 221-23 (holding that a party accused of rape could not strike for cause a prospective juror merely because the prospective juror was a recent rape victim). As we have previously held, "[p]er se disqualification of venire[person] is not favored" and so "[m]ere interest in the subject matter of a prosecution does not, *per se*, require that a venire[person] be set aside for cause." *Id*. at 222. Because "the test of impartiality is whether the venireperson can lay aside [their] preconceived views and render a verdict based solely on the law and evidence presented at trial," what disqualifies a juror "is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Lovos-Rivas*, 58 Va. App. at 61 (first quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000); and then quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)).

We will not overturn the trial court's finding on juror impartiality "unless it is plainly wrong or without evidence to support it." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (quoting *Sheppard v. Commonwealth*, 250 Va. 379, 387 (1995)). "Additionally, in assessing a [prospective] juror's impartiality, the appellate court reviews the *voir dire* of each juror as a whole, not just isolated statements by that juror." *Id.*

Juror S disclosed during the Commonwealth's voir dire that her father had abused her and her sister when they were "young." Following this disclosure, Faust asked Juror S if that experience would "make it hard for [her] to give a fair trial today?" She answered, "No," and explained that her father "did the right thing" after the abuse by getting "help" and by "acknowledg[ing]." Juror S also expressed that she had forgiven her father. The trial court denied Faust's motion to strike the juror for cause based on her statement that her experience would not interfere with her ability to provide a fair trial.

Considering the juror's responses as a whole, the trial court did not abuse its discretion by concluding that Juror S could be impartial. A juror's ability to remain impartial is not determined by the total absence of any preconceived views but rather by her ability to lay aside those views and render a verdict based on the law and the evidence. *Lovos-Rivas*, 58 Va. App. at 61; *see also Taylor v. Commonwealth*, 67 Va. App. 448, 456 (2017) ("A manifest error occurs when the record shows that a prospective juror cannot or will not lay aside his or her preconceived opinion."). By answering "No" when asked whether her experience would "make it hard for [her] to give a fair trial today," Juror S evinced such an ability to lay aside any preconceived views in rendering a verdict.

Further, Faust uses *DeLeon v. Commonwealth*, 38 Va. App. 409, 413 (2002), to intimate that Juror S' responses were equivocal. In comparison, *DeLeon* reveals instructive distinctions from this case that operate to undermine Faust's argument. In *DeLeon*, a venireperson "became upset when discussing the rape of her sister-in-law," and "her equivocal responses to questions during *voir dire* clearly demonstrated that she was unsure of whether the rape of her sister-in-law would affect her ability to listen to the evidence in the case." *Id.* For example, "she was 'not sure' whether the incident would affect her ability to listen to the evidence." *Id.* The venireperson further affirmed that she "could 'identify' with the victim" due to her sister-in-

law's rape. *Id.* Thus, the venireperson's responses engendered doubt as to her impartiality. Indeed, her responses "repel[led] the presumption of innocence." *Lovos-Rivas*, 58 Va. App. at 61 (quoting *Justus*, 220 Va. at 976).

Juror S made no such statements. To the contrary, when asked whether her experiences would make it hard for her to render an impartial verdict, Juror S answered *un*equivocally, stating "No," and went on to note that her "father did the right thing" by getting help. The juror further stated that she had forgiven her father.

Faust characterizes Juror S' statements about her father as "non-sensical," and argues that the trial court "focused too much on the response to one question, and did not factor in the non-sensical responses about her father . . . ." Yet, Faust does not explain, with any precision, *why* Juror S' responses about her father were non-sensical. What is more, her responses expressed an attitude not of partiality, but, as the trial court found, impartiality: Juror S had forgiven her father, and thus, answered "No" when asked if her experience with abuse would make it hard to give Faust a fair trial.

Accordingly, the trial court did not abuse its discretion by refusing to strike Juror S for cause.

## II. Evidentiary Rulings

### A. *Hearsay Objection*

At trial, Faust objected when, after the Commonwealth asked Cohen, "Why did you call the police to the house on that day?," Cohen responded, "When [Faust] came back to get the U-Haul, he was packing up, and [J.M.] asked me—." In response to Faust's hearsay objection, the Commonwealth explained that it was not offering the testimony for the truth of the matter but rather to explain "why [Cohen] called the police." The trial court overruled the objection. Faust asserts that the trial court erred by allowing Cohen to testify that he called the police after J.M.

asked if Faust was moving out because he had "touched" them. Faust contends that J.M.'s statement constituted inadmissible hearsay. Even if the statement was not offered for its truth, however, Faust asserts that it was not relevant and that its prejudicial impact exceeded its probative value. We disagree with Faust's contentions.

"Hearsay is an out-of-court statement offered for the truth of the matter asserted therein." *Davis v. Commonwealth*, 73 Va. App. 500, 507 (2021) (citing Va. R. Evid. 2:801(c)). That is, "hearsay is 'evidence which derives its value, not solely from the credit to be given the witness on the stand, but in part from the veracity and competency of some other person.'" *Id*. (quoting *Chandler v. Graffeo*, 268 Va. 673, 682 (2004)). Thus, "if the value of the evidence is not tied to its credibility—*i.e*. is not offered for its truth—then the hearsay rule does not operate to exclude it." *Id.* at 508. Moreover, our Supreme Court has held that "[t]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made." *Winston v. Commonwealth*, 268 Va. 564, 591 (2004) (alteration in original) (quoting *Weeks v. Commonwealth*, 248 Va. 460, 477 (1994)). "If the court can determine, from the context and from the other evidence in the case that the evidence is offered for a different purpose [than the truth of the matter asserted], the hearsay rule is no barrier to its admission." *Id.* (quoting *Manetta v. Commonwealth*, 231 Va. 123, 127 (1986)).

"The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Church v. Commonwealth*, 71 Va. App. 107, 123 (2019) (alteration in original) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016)). "Relevant evidence may be excluded if 'the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting Va. R. Evid. 2:403(a)(i)). "Rule 2:403's requirement that only *unfair* prejudice may be considered as grounds for non-admission

- 9 -

'reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party.'" *Id.* at 673 (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). "The responsibility for balancing the probative value versus the prejudicial effect rests in the sound discretion of the trial court." *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021).

Here, the Commonwealth offered the evidence not for the truth of the matter—i.e., that Faust touched J.M.—but rather, to explain what Cohen did next. The fact that J.M. made the statement was relevant to explain why Cohen spoke with her and A.C. about the abuse that day and reported it to the police.

Faust draws a parallel between this case and *Jenkins v. Commonwealth*, 254 Va. 333 (1997), arguing that, as in *Jenkins*, J.M.'s statement "[i]s it because he touched us," is "probative of the truth of the pending charges, and the statement's value rests on the credibility of [J.M.]." This case bears no resemblance to *Jenkins*. There, "the trial court permitted [an] expert to testify that the [victim of sexual abuse] had told him that he had been 'sexed.'" 254 Va. at 338. Our Supreme Court concluded that the victim's statement "was uniquely probative of the truth of the pending charge" and did not fall under any hearsay exception. *Id.* at 339. Thus, the victim's extrajudicial statements constituted independent evidence of the sexual abuse charge and the trial court erred in overruling the appellant's hearsay objection. *Id.* at 340.

In responding to the Commonwealth's question of why he called the police, Cohen explained that J.M. asked if Faust was leaving "because he touched us." Cohen further testified that, following this statement by J.M., he "brought the girls into the room, and we immediately asked them, questioned them on that." Thereafter, Cohen called the police. Unlike in *Jenkins*, J.M.'s statement was not "*uniquely* probative" of the offenses with which Faust was charged. Further, J.M.'s statement included no details as to how Faust touched the girls. And Cohen's subsequent related testimony describes only that he had a conversation with the girls which

- 10 -

prompted his call to the police, making this evidence probative—but not dispositive or even *uniquely* probative—of a criminal act having been committed. But even this limited probative value is no more than tangentially prejudicial to Faust. *See Fields*, 73 Va. App. at 673 ("Rule 2:403's requirement that only *unfair* prejudice may be considered as grounds for non-admission 'reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party.'" (quoting *Lee*, 290 Va. at 251)). The trial court did not err by admitting J.M.'s extrajudicial statements to Cohen.[4]

B. *Rustioni's Expert Testimony*

Faust asserts that the trial court abused its discretion by allowing Rustioni to testify as an expert on delayed reporting and the dynamics of child abuse.[5] He contends that Rustioni's testimony was inadmissible because it constituted a direct comment on the victims' veracity and served to bolster their credibility. Thus, Faust claims that Rustioni's testimony invaded the province of the jury. Further, he asserts that Rustioni's testimony was not relevant because it lacked adequate factual foundation. All of Faust's arguments regarding Rustioni's testimony are unavailing.

Relying on *Davison v. Commonwealth*, 18 Va. App. 496 (1994), Faust argues that Rustioni's testimony was inadmissible because it invaded the province of the jury by commenting on witness credibility and veracity. But *Davison* presents as a poor analytical

---

[4] Faust also argues that "the Commonwealth did refer to the time frame in which this statement was made in its closing argument," and thus, "invit[ed] the jury to determine the credibility of the witness through all the statements made," thereby contradicting the Commonwealth's "original contention that the statement was not being offered for the truth." This argument is devoid of merit, as both girls testified that they had disclosed Faust's conduct to Cohen.

[5] Faust has abandoned his assignment of error challenging the trial court's finding that Rustioni was qualified as an expert in "delayed reporting and [the] dynamics of child abuse." Accordingly, we need not address that issue.

- 11 -

match, and therefore, is an unsuitable guide for this case. First, the child therapist in *Davison* failed to qualify as an expert. *Id.* at 503-04. Moreover, we held that the child therapist's testimony specifically commented on the statements of a testifying witness. *Id.* at 504. Consequently, we concluded that "the prosecutor's intent [was] to bolster the truth of [one of the victims'] testimony at trial" as, given that the witness had made a false statement about the appellant, the witness's credibility was an "ultimate issue" for the jury. *Id.*

Here, the trial court qualified Rustioni as an expert on the phenomena her testimony addressed—delayed disclosure. In this way her testimony cleared a threshold admissibility requirement that the *Davison* child therapist did not. Further, Rustioni did not opine, either directly or indirectly, on a specific witness's veracity or credibility.[6] Whereas in *Davison*, the child therapist was found to be "offering an opinion about why the child's testimony should be believed and why a prior inconsistent statement should be disbelieved," "[n]o such testimony was elicited in *this* case." *Taylor v. Commonwealth*, 21 Va. App. 557, 565 (1996) (emphasis added). Rustioni's testimony focused generally on the reasons for delayed reporting by child sexual abuse victims. *See Stevens v. Commonwealth*, 72 Va. App. 546, 555 (2020). Rustioni did not opine regarding either child's specific statements. Thus, Rustioni did not invade or otherwise impermissibly encroach upon the province of the jury.[7] *See Fitzgerald v. Commonwealth*, 223

---

[6] Notably, unlike in *Davison*, neither child victim in this case recanted their allegations of abuse before trial. To the contrary, the accounts of A.C. and J.M. were consistent and corroborated by circumstantial evidence and each other's testimony.

[7] Faust concedes, on appeal, that "[i]f the expert does not express a direct opinion on the victim's credibility, or a direct opinion as to which version of events should be accepted by the jury, testimony that bolsters the witness'[s] credibility . . . seems to be admissible."

Va. 615, 630 (1982) (holding that where an "expert did not attempt to express an opinion as to the veracity of any witness . . . the trial court did not err in admitting his testimony").[8]

Faust also contends that Rustioni's testimony was inadmissible because, due to the improper manner in which the prosecution questioned her, Rustioni's testimony was "speculative."  In so contending, Faust rightly asserts that expert opinion testimony is admissible in a criminal case when the "opinion [is] based upon h[er] own knowledge of facts disclosed in h[er] testimony or [s]he may give an opinion based upon facts in evidence assumed in a hypothetical question."  *Simpson v. Commonwealth*, 227 Va. 557, 565 (1984) (quoting *Walrod v. Matthews*, 210 Va. 382, 388 (1969)); *see also* Va. R. Evid. 2:703(b) ("In criminal cases, the opinion of an expert is generally admissible if it is based upon facts personally known or observed by the expert, or based upon facts in evidence.").

But at trial, Faust did not object to what he now contends is the Commonwealth's failure to lay a proper foundation by asking Rustioni hypothetical questions.  Instead, he made a "pro forma objection" *in limine* to the Commonwealth's introduction of Rustioni as follows:

> But we would submit to the Court and ask that the Court recognize
> our objection that this testimony is speculative; that this testimony
> is not relevant, because it doesn't relate to the parties here in
> question; that this testimony does not—it's overly prejudicial; that
> this testimony is duplicative; that this testimony goes into the
> province of the jury where the ultimate arbiters of facts, and
> credibility of the witnesses; and that it is also a violation of due
> process . . . .

---

[8] Further, notwithstanding his acknowledgement that "[e]xpert testimony that tends to corroborate a victim's testimony is admissible," it appears Faust's arguments aim to blur the lines between corroboration of a victim's testimony and invasion of the province of the jury. That Rustioni's testimony was corroborative of the child victims' testimony does not, as such, render Rustioni's testimony inadmissible. *Cf. Taylor*, 21 Va. App. at 565 (finding that an expert's testimony corroborating "the fact that the victim had suffered a traumatizing event, as evidenced by her mental condition, . . . neither [constituted] [an] expression of an opinion on the victim's credibility nor an opinion as to which version of events should be accepted by the jury").

When the Commonwealth offered Rustioni as an expert witness, Faust simply stated, "No objection subject to our earlier objection." Faust's "earlier objection" did not address the form of the questions posed to Rustioni. Nor did Faust object to the formulation of the Commonwealth's questions contemporaneous with their being posed.

"Under settled principles, the 'same argument must have been raised, with *specificity*, at trial before it can be considered on appeal.'" *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011) (emphasis added) (quoting *Correll v. Commonwealth*, 42 Va. App. 311, 324 (2004)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpublished order*, No. 040019 (Va. Oct. 15, 2004). Rule 5A:18 forecloses this Court's consideration of objections not duly noted. And "[a]lthough Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [Faust] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

As Faust never provided the trial court the opportunity to rule on the same objection that he raises on appeal, his argument is waived. *See* Rule 5A:18. Accordingly, to the extent that Faust argues that Rustioni's testimony lacked a sufficient foundation to be relevant, he has failed to preserve that argument because his objections at trial did not address the lack of hypothetical questions posed during her examination.[9]

The trial court did not err in admitting Rustioni's testimony.

---

[9] Moreover, to the extent that Faust argues that Rustioni's testimony lacked a sufficient foundation because "she was not asked questions about the facts of the case," such an objection is likewise waived. *See* Rule 5A:18. Although Faust argued in his *in limine* objection that Rustioni's testimony would be "speculative" and that Rustioni had not "examined either of the two complaining witnesses," Faust failed to level a specific objection regarding the Commonwealth's failure to pose questions about the facts of the case sufficient for the trial court to have intelligently ruled on the issue. *See Schwartz v. Commonwealth*, 41 Va. App. 61, 71

III. Jury Instruction on Assault and Battery as a Lesser-Included Offense

Faust asserts that the trial court erred by refusing to instruct the jury on assault and battery as a lesser-included offense of aggravated sexual battery. He maintains that he "offered two jury instructions in lieu of the Commonwealth's instruction on the elements of aggravated sexual battery." The trial court refused the instructions because it ruled that assault and battery is not a lesser-included offense of aggravated sexual battery.

Faust concedes that these two instructions are not part of the record. Nevertheless, he contends that his "proposed instruction was to include language in the charging instruction 'instruct[ing] the jury that they are able to convict Mr. Faust of assault and battery if they don't find the elements of touching of the intimate parts and the intent to sexually molest.'" We disagree, finding that we cannot reach this issue without the actual text of the missing instructions.

Under settled principles, "the [trial] court's judgment is presumptively correct and the burden is on the appellant to present a sufficient record to permit a determination whether the [trial] court committed an alleged error." *Commonwealth v. Williams*, 262 Va. 661, 669 (2001); *see also Clarke v. Commonwealth*, 60 Va. App. 190, 199 (2012) ("It is appellant's burden to provide this Court with a record from which it can decide the issues in the case."). Although the

(2003) ("[T]he main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals."), *aff'd*, 267 Va. 751 (2004).

If, however, what Faust argues is that Rustioni's testimony was inadmissible because it was speculative due to her not having examined either A.C. or J.M., this skeletal argument is also waived. *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) ("Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'" (alteration in original) (quoting *Sneed v. Bd. of Prof. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010))). Faust, at best, gestures at this argument when he contends, "Not once did Rustioni testify to the facts of the case or asked to assume facts in evidence about the specific case," and claims, "Nor could she [so testify], since she had not interviewed the victims or even reviewed their statements."

record includes the parties' argument regarding Faust's proposed instructions on assault and battery, we are unable to extrapolate the actual text of the proposed instructions from the argument. Further, for us to do so is to engage in speculation regarding the language, if not the concept, addressed in the proposed instructions. That is, even if the contours of the instructions are discernable from the parties' argument,[10] the specific *content* of the instructions is not.

In the absence of the refused jury instructions, this Court is without the essential material needed to adjudicate the trial court's decision. Where an appellant fails "to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of . . . the judgment will be affirmed." *Justis v. Young*, 202 Va. 631, 632 (1961). *Cf.* Rule 5A:7(a)(2) (specifying that a record on appeal must include "each instruction marked 'given' or 'refused' and initialed by the judge"). Because Faust did not provide us with a sufficient record from which to ascertain whether the trial court erred in the manner alleged, we are unable to address the merits of Faust's argument and the judgment of the trial court will be affirmed.

### IV. Sufficiency of the Evidence

Faust maintains that the trial court erred by denying his motion to strike the aggravated sexual battery charges involving A.C. and J.M. and the attempted rape charge regarding A.C. Faust contends that, because the evidence failed to prove that he touched A.C.'s or J.M.'s "intimate parts" or that any touching occurred with the "*intent* to sexually molest, arouse or gratify any person," the Commonwealth failed to carry her burden of proof as to each of the multiple counts of aggravated sexual battery of which Faust was convicted. With respect to his

---

[10] Faust argued that "basically [if] . . . there was an offensive touching, but that it was not of [the children's] intimate parts, and that it wasn't with the intent to sexually molest, arouse or gratify . . . , [the] [jury] can convict . . . Faust of the assault and battery in lieu of aggravated battery."

conviction for A.C.'s attempted rape, Faust argues that "[t]he evidence . . . supported a conviction for the completed act of rape, not the crime of attempted rape."

Faust failed to make these same arguments at trial. Instead, Faust moved to strike the aggravated sexual battery and attempted rape charges because the victims' testimony was "inherently incredible," because the girls' "allegations" were "very generalized," and lacked corroboration, and because "[t]here's simply no evidence that this is not just one continuing memory that these girls have." Although Faust did argue, in his first motion to strike, that "[t]he Commonwealth has simply not laid out a prima facie case these are separate and distinct acts," he did not specifically assert, in *either* his first or second motion to strike, that the evidence failed to prove that he touched A.C.'s or J.M.'s "intimate parts" and that the touching was undertaken with the "intent to sexually molest, arouse or gratify any person." Nor did Faust argue that such proof must be "adduced for each *act* of sexual abuse." Moreover, Faust never argued that the evidence failed to prove attempted rape because it proved the completed act of rape instead.

"Rule 5A:18 states as follows: 'No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.'" *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 73 (2015) (quoting Rule 5A:18). "The primary purpose of requiring timely and specific objections is to afford the trial judge a fair opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Id.* (quoting *Rodriguez v. Commonwealth*, 18 Va. App. 277, 284 (1994) (en banc)). "Accordingly, '[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court.'" *Id.* (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).

Because Faust challenges the sufficiency of the evidence on different grounds than those presented to the trial court, these arguments are waived. What is more, Faust does not ask in his opening brief that we consider his newly raised arguments under either the exceptions for good cause or to meet the ends of justice in Rule 5A:18, and we decline to apply those exceptions sua sponte.[11] *Williams*, 57 Va. App. at 347.

## CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*

---

[11] Faust's invocation of the ends-of-justice exception in his reply brief comes too late. *See Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that argument raised for the first time in reply brief was waived); *Whitley v. Commonwealth*, 223 Va. 66, 79 n.2 (1982) ("[W]e will not notice a non-jurisdictional question raised for the first time in a reply brief filed in this Court."); *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief or at oral argument).